Good morning, John Ballas on behalf of the defendant appellant Juwan Ferguson. I was also the trial counsel in this case. I'm intending, subject to the court's comments, to focus on two arguments. That's the claim that the district court erred in invading a 1998 assault with a firearm conviction under federal rules of evidence 404B and 403, and also the claim that Mr. Ferguson was improperly sentenced under the Federal Three Strikes Act because one of the prior convictions did not qualify the other prior conviction, the federal conviction of assault with intent to rob a postal employee. Mr. Ferguson On the first point, I'm speaking only for myself, I would have to agree on the 1998 felony conviction that the trial judge probably did err, but it seems to me that in this case, the error was harmless. Why is that wrong? Mr. Laird I think it's wrong because I think this was a very close case. The jury rejected the government's theory on first degree and second degree murder, found them guilty of voluntary manslaughter. The difference between voluntary manslaughter and involuntary manslaughter is not that great. Voluntary manslaughter is a killing with malice. Mr. Ferguson Yeah, but in this case, the officer, Avila, came in and found your client kicking this guy, who apparently is unconscious at that point, kicking him around the head repeatedly. He was not acting in self-defense, which is an entirely different thing than what we're talking about in the other setting. Mr. Laird I have two responses to that. First of all, in the context of whether the self-defense is reasonable is much different in a prison cell than it would be out in the street. Well, you know, I suppose theoretically I could agree that that may be true. But how can you get any self-defense out of kicking the head of a person who is unconscious? Mr. Laird Well, I was going to address that, but to put it first in the context of the prison cell, you had two people where Mr. Slaughter, it looks like almost all the evidence was through the first punch and hit Mr. Ferguson in the nose. Mr. Slaughter is bigger than him. Another inmate across the hall, across another cell, saw them going at each other. And then there's testimony from Mr. Slaughter and from one of the officers that, first of all, that the staff will not go in to break up a fight unless one of the inmates, even if one is down on the ground, is cuffed up. And when Mr. Officer Briseno tries to get Mr. Slaughter to cuff up and leave the cell, he's stopped, he's looking at Mr. Slaughter. He says, if I do, he's going to come up and get me and hit me. And so he, you know, the whole fight only took probably a minute or less. And the question is whether or not the amount of force was reasonable under these circumstances. And then eventually he does cuff up. So he stopped voluntarily, and then he cuffed up. But the undisputed evidence is the officers are not going to go in to break up a fight, and Mr. Ferguson does not know that he's down and out. The other ---- You don't talk about the fact, though, that when Slaughter was on the floor under the floor, he was in the head, that the officer told him to stop. And instead of stopping, he escalated his behavior and kicked him all the more. With respect to Officer Avala's testimony, you know, the prosecutor highlighted one portion of it. If you look at the cross-examination afterwards and the other testimony, his testimony is not that ---- was not that strong, was not that conclusive, for two reasons. One is, during cross-examination, he specifically gives me a number of I don't remember to a number of different questions, specifically about where he's putting in the orderly at the same time. And the way the evidence came out was that he was outside of the cell in the beginning, and he had to put the orderly away first and then take care of what was going on in that cell. So he kind of looked in the cell, then had to go back and take care of the orderly and come back. And he testified that he didn't remember what happened to the orderly. He didn't remember putting him back into the cell that's at Excerptor Record 153. And the second thing that's significant is Officer Avala testifies that John Ferguson continues to kick Mr. Slaughter when he's down on the ground while Lieutenant Cobb is outside the cell and comes there, too. And that's at Excerptor Record 154. While Lieutenant Cobb testifies that when he came, he was more the supervisor, John Ferguson had already stopped, he was not kicking Mr. Slaughter. He was already he was in the cell, but he had stopped. So their two testimony on a relatively key point contradicts each other. And I think because Officer Avala's testimony is not that strong, it was relatively contradicted by Lieutenant Cobb and forgot a number of details, and the fact that in the prison context where the amount of force is different than in an outside setting where Mr. Ferguson doesn't know if Mr. Slaughter is down and out. And when Lieutenant one last point was that when Lieutenant Cobb came to the door, he said he couldn't tell whether Mr. Slaughter was unconscious or not. And I think Mr. Ferguson used the amount of force that I think there's a strong argument that it was reasonable under the circumstances. And I think the I guess I pointed two cases out, the Tenth Circuit and the Fourth Circuit, that says almost very similar circumstances, that it is an error under 404B and 403, under Komenich and Sanders. Getting to my next argument, the three strikes one, it's a relatively simple issue on the collateral estoppel and judicial estoppel. And the argument is that the prior conviction in federal court, they had to determine under the sentencing guidelines the level of injury. And they made in a plea agreement an agreement between a two-level injury for bodily injury and a four-level injury for serious bodily injury, and that the injury came in in between the two of them, and it was labeled in the plea agreement as somewhat serious bodily injury. But that would mean by definition that it does not reach the definition of a four-level serious bodily injury. And as a result, under the doctrines of collateral estoppel and judicial estoppel, the government should be estopped from relitigating the issue here. Well, I can't see that this is collateral estoppel under the judicial definition because something needs to be, quote, actually litigated and decided to have a collateral estoppel. This was not litigated. I mean, we have it as a plea. Judicial estoppel seems to me more promising. Well, I don't want to – I would disagree with you on the collateral estoppel because I think that the case law talks about in terms of actually litigated is that you don't have to actually have a trial or a hearing. You could actually be a material issue in the case that the parties resolve through a plea agreement or a settlement. If that issue is there. So if you get a factual stipulation by the parties, that suffices for collateral estoppel. In a plea agreement where that is one issue that the court has to make a determination at sentencing on what the level of bodily injury, yes. I'm not going to say – Wait a minute. Did the court make the determination or did the parties agree to this in the plea agreement? The parties agreed in the plea agreement and then the court accepts, adopted the plea agreement. But the court has no evidence in front of it except for the plea agreement and then the parties saying, yeah, yeah, that's what we agreed to. Well, the court had the pre-sentence report. I mean, you're right. As a practical matter, the court took the parties' positions and accepted it. And I will say that the government and the district court Judge O'Neill below never contested that the concept of collateral estoppel applies. They just disagreed with me on the grounds that it was a somewhat serious bodily injury. But I think – so I think to some extent that that issue, I would also argue, has been waived by the government. Now, on the judicial estoppel, I think that's equally strong ground because the government has taken a contrary position in a prior proceeding, and now when their interests are different, want to change that and basically take a position that it was serious bodily injury. I'm going to reserve my remaining five minutes for rebuttal. Okay? Thank you. Good morning. May it please the Court, my good friend and counsel, Mr. Ballas. My name is Deuce Rice. I'm an assistant U.S. attorney down in Fresno, and I was one of the trial attorneys in this case. The first thing I wanted to mention is basically that the Sanders case, the Comanche case, the Steele case, those are all out-of-district cases. Out-of-circuit, you mean? Out-of-circuit. Sounds like we need an opinion. We need an opinion. We need an opinion. And I think there actually already – there actually already is kind of one on this. I kind of made a mistake, I think, in my approach to the briefing on this case, and I didn't focus enough on United States v. Verdusco, which is cited in my brief. And basically in that case, it was a case where the defendant was bringing an affirmative defense of duress in a drug case, and they allowed in the prior drug conviction on the issue of whether or not he had the intent to do the subsequent drug crime. That – this case was a self-defense case, and that kind of, I think, I got off track focusing on self-defense. But duress and self-defense are both in the nature of affirmative defenses. And here, in this case, the defendant basically was asserting at trial that I acted in reasonable self-defense. Well, this was a case where the defendant had the man on the – already on the ground, drug him out from underneath the bunk, and then proceeded to stomp on his head. The question of how much force he was using was critical to the government's case and also improving intent to kill, because this was originally charged as a first-degree murder case. This basically – in my opinion, I differ with Mr. Ballas. I do not believe this was a close case on voluntary manslaughter. This was a case where the man was already unconscious on the ground, that was the victim, and his head is being stomped on. Now, I think, in the end, I agree with you. What's your evidence that he's already unconscious instead of immobilized? Well, my – I understand that he's lying on the ground. He's under the bunk. He's pulled out from under the bunk. And after he's out on the floor – That's a picture of the man's face after he's been stomped on – Yeah, yeah. Taken right after – You know, that's not – but that's not at all responsive to my question. Well – You said that when he was pulled out from under the bunk and before he was stomped on five times by the defendant, he was already unconscious. And now you're showing me a picture of after he's been stomped on five times. My question to you is, what evidence do we have that he was unconscious as distinct from immobilized when he was pulled out from under the bunk? I think I cited in my brief the facts with regard to that, is that Officer Avila heard the sounds of a struggle and ran to the cell door. That's at Reporters Transfer 145. Officer Datre asked Officer Avila to look in the cell to see if they were fighting and heard Officer Avila yell at the defendant. Officer Avila – that's at 120 – Officer Avila saw the defendant hitting Slaughter and Slaughter was on the floor at that time, Reporters Transfer 145. Slaughter was not moving and the defendant was kicking Slaughter in the head at 146. Slaughter's body was by the bunk and the defendant kicked him underneath the bunk at 146. The defendant then pulled Slaughter's body out from underneath the bunk by his legs, adjusted Slaughter's head and stomped on the back of Slaughter's head at least five times. Now, if you're laying there on the ground and somebody's dragging you out, adjusting your head, and you're not unconscious, you're going to get up and fight. Now, I don't think this was any kind of a close fight. Well, I was wondering, does it make a difference whether he was unconscious or immobilized? I don't think it does at all. But also, it said the officer testified that Slaughter was not moving at any point when the defendant was stomping on his head. You know, other than being there and seeing the damage inflicted, and basically all that Mr. Ferguson suffered was a bloody nose on this kind of thing. Mr. Ferguson was a far better fighter than Mr. Slaughter was. I think the evidence does suggest, and I think one of the officers, Datre, said it was his perception that Slaughter, the victim, hit Mr. Ferguson first on the thing. And I think that the orderly, that's what he saw on the thing, and I think Mr. Slaughter made a terrible mistake in this regard in trying to carry out a first strike, which just didn't fly. But I think that in analyzing the 404B evidence with the assault with a fireman, why that was important in this case is because it showed a willingness to use deadly force. And that's far different than the other assault with intent to commit robbery that the defense conceded could come in under 404B and 403. In the Sanders case, which the defense cited in their brief, which was a stabbing case, the level of force used in the self-defense was not an issue in that case. But here, the level of force that was used to show intent to kill, which is an element of first-degree murder, second-degree murder, involuntary manslaughter, was at issue. And I think that makes the difference. Also, the Sanders case, that was not a 3-0 decision. By the Sanders court, that was a 2-1 decision. And if you look at the dissent of Circuit Judge Niemeyer in that case, he found in his view that this was perfectly proper 404B evidence to use that. In the Comanche case, which was the other case that the defense cited from out of the circuit, that was another stabbing-type case, but involving a box cutter. One of the things that occurred in that case, and if you look at the Comanche case, and to show kind of what the court in that case, that decided that case, with all due respect, I don't believe really understood the 404B evidence because in the hypothetical, and it's at 1267 of that opinion, they're talking about a case where a hypothetical about a man murdering his wife who runs over her with a car. And he's claiming that it was an accident. And the court in that case is saying that there were prior incidents where the man had hit his wife and that those wouldn't come into evidence under 404B. I think the court had totally missed it. That's exactly the type of stuff that would come in to show the relationship between the victim and the assailant, and would always come in. And so I think that shows a lack of understanding by the author of that opinion about what 404B evidence is really about and why it's needed. I have to say 404B is just a perennial puzzle to me. Well, I think it's tough. And honestly, I stay away from it for the most part unless I think it's really necessary. And in this case, I thought it was necessary because the prior assault with a firearm showing the willingness to use deadly force was in line with, you know, the man being down on the ground. And he's claiming that I'm exercising reasonable self-defense. Yeah, but, you know, but if it's a bit like he's trying to kill him. But if that's enough to bring in a prior, let's say you've got one violent crime as a prior, and we now have a different violent crime, first one was a firearm, the second one he's stomping on a guy who attacked him, but he's now either immobilized or at a minimum and maybe unconscious. Boy, that just sort of sounds like, I mean, if that's admissible under 404B, it seems to me that any violent prior is going to be admissible for any violent crime prosecution. I don't think so. I think it matters. Where's the stopping point then? Because, I mean, this isn't rhetorical. I'm really having trouble with this. It's a hard one. I think it's very difficult. I think that where you have a specific intent required, you know, like an intent to kill, and you have a prior act where it shows that the person chose to use deadly force, I think that is probative on whether or not where they're arguing that I did not, you know, use deadly force, that they did make that choice. Because state of mind is very difficult to prove. And I think that in those circumstances where the state of mind is what's being argued and what is being proffered as, you know, an affirmative defense, like duress in the Produsco case or like I acted in reasonable self-defense in this case, I think that's where it should come in. In your typical assault case where, you know, you're just talking about, you know, the person did an act of violence and stuff, I think not so much. I think it's too risky. I think it does probably get close to the line and cross the line and just be in propensity evidence as opposed to going to some narrow specific issue. Okay. Before your time runs, could you address the three strikes issue? Because I think that may be the softest spot you've got in your case. The three strikes issue, basically what happened is on the assault with the intent to rob the postal carrier is that there was a plea agreement. In that plea agreement, the defendant agreed to plead guilty to the assault with intent to rob and he stipulated that he used somewhat, there was somewhat serious bodily injury inflicted on the postal carrier. There was a pre-sentence report done and the postal carrier revealed all his medical problems. The attack happened on April the 2nd. It comes quite a bit longer. Two months later, that postal carrier still hasn't returned to work, is still in physical therapy, has problems with the right arm. It also detailed all the extreme pain and suffering that the postal carrier underwent in that robbery when Mr. Ferguson basically beat the crap out of him inside his postal vehicle and then kicked him out the door of it down the road. The defendant's stipulation in the plea agreement to using somewhat serious bodily injury, I think it would be binding on the defendant. It's basically an admission. Is it binding on the government? The somewhat serious bodily injury? The issue in here is who has the burden of proof? And you've got in the plea agreement part, you know, in the post, you know, before he's convicted, beyond a reasonable doubt, kind of a problem for the government to prove. That's not the case in the three-strike situation. In the three-strike situation in the Coluna case, which was an en banc decision by this court, basically once the government puts forth that the defendant committed the robbery, the violent crime, then the defendant has the burden of proving by clear and convincing evidence that he did not inflict serious bodily injury. How can he do that where he stipulated in the plea agreement that he committed somewhat serious bodily injury and the facts from the PSR show that, in fact, the postal carrier did suffer serious bodily injury? Maybe I'm misunderstanding then. Are you saying that definitionally what he pled to in that prior with the postal worker is serious bodily injury with respect to the three-strikes law? Yes, sir. They didn't stipulate that there was not quite serious bodily injury. They stipulated that there was somewhat serious bodily injury. But he received a three-point enhancement for whatever it was he got, not a four-point enhancement, which is what the sentencing guidelines call for in the case of a serious bodily injury. Correct. So if that's the case, then does he meet the level of a prior to the extent of a serious bodily injury? I think so, particularly where the facts as to the actual injuries of the postal carrier show that, in fact, he did suffer serious bodily injury. I understand. But we're going back to this 2002, which the government seems to go to as well. And the government refers to this a somewhat serious bodily injury, and yet it was a three-point enhancement. It seems to me that the three-point enhancement versus the four-point enhancement may have some importance here. Well, whether or not somebody gets one level more in a plea agreement is not the same thing as saying that the defendant can prove by clear and convincing evidence that he did not inflict serious bodily injury. That issue was not litigated, and I think Judge Fletcher brought it up. That wasn't being litigated in that plea agreement. That's why there's no estoppel here. Now, there are two different kinds of estoppel potentially on the table, one of them in collateral and the other judicial. Now, did you argue in the district court that collateral estoppel wasn't available? I did. We argued that collateral estoppel was not available, and I cited a case, and I think I don't know if I ---- Okay. My only question is whether you argued it. Okay. Yes. Basically, you know, I didn't feel that estoppel was available, and I also felt that the defendant had, by saying that he had committed somewhat serious bodily injury, had made an admission, and I also felt that ---- Okay. I disagree with you on that point. Okay. So I'll save that off to one side. So I'm more interested in the estoppel. Right. I mean, reasonable minds can differ on this, of course. You know, and I think that ---- What about the judicial estoppel point? You know, I'm not sure what to think of that. I mean, judicial estoppel in its basic definition is a party adopting one position in an earlier litigation can't change and adopt a different position when it suits his or her purposes to have the different position in the later litigation. The government did adopt the position in the plea agreement with the three-point enhancement that the amount of injury was between bodily injury but didn't quite rise up to the level of serious bodily injury. Now, was that an adoption by the government, a position for its own advantage, so that judicial estoppel would apply? I don't think that at the time that that plea agreement was being entered into, that this issue of whether or not the defendant can prove by clear and convincing evidence was coming up in the mind. I don't know what was in the mind of the government attorney, because that was actually in a different district than mine. I don't ---- If we put it to one side, there are a couple of questions. Both collateral and judicial seem to be somewhat difficult.  But let's put that to one side and just look at the injuries that we know about from the PSR. I don't know that they meet the definition of serious bodily injury under the three-strikes law. I have it right here. Abrasions and swelling over the upper and lower back, both forearms, chest, right face, and right thumb. The apex of the scalp shows a lot of swelling. Does that meet the definition of serious bodily injury? I think so. I believe extreme pain is one of the things, the protracted injury to the right arm where he's lost use of it and is going to physical therapy, I believe. Here it is. I mean, this is the statutory definition of serious bodily injury. Substantial risk of death. I don't think that's there. Extreme physical pain. You argue that it is. Protracted or obvious disfigurement. I don't think that's there. Protracted loss or impairment of the function of a bodily member, organ, or mental facility. Impairment of the function. Maybe he's not using his arm. Hmm. Maybe. I mean, I get a ---- That's kind of where I am. Okay. This is the prognosis for him to possibly return to work at the end of May, which is providing the movement strength of his right arm and hand returned to a more normal condition. Yeah. Okay. I mean, obviously this isn't, you know, an injury where he only had an arm lopped off or something like that, which would make it a lot clearer. So I can see where the court's coming from, of course. I got it. Okay.  That's all the time that I have. Thank you. Thank you, Your Honor. I had the good fortune many years ago to clerk for Judge Pragerson, and I used to watch him tell prosecutors when they would make harmless error arguments, if the error is harmless, you know, why do you muck it up and present the evidence in the first place? And it must be, in this case, the prosecutor states, well, you know, I'm going to argue that he doesn't usually use 404B evidence of this type, but it was necessary. And I think that kind of shows the significance of the evidence, that it was an assault with a firearm, and the harmless error standard is not whether looking at the evidence separately is sufficient for a jury to conclude beyond a reasonable doubt. It's whether the evidence that was erroneously admitted may have materially affected the verdict, whether you can have fair assurance it didn't, where the prosecutor is telling you that it was necessary for him to do it, where Officer Avala's testimony was shaky, and in this prison context, I think the answer has to be that the evidence was not harmless. Two other points I'd just like to make is that Lieutenant Cobb at reporters at Excerpts of Record 264, 265 says that when he got to the cell door, he couldn't tell whether or not Slaughter was unconscious. The prosecutor, when he refers to the Comaneci case, the Tenth Circuit case, that one specifically refutes the argument that the prior assault conviction was relevant and admissible under 403, where, and the issue of whether the amount of force was reasonable or not. That's not the exact same one in this case. And I think, unless the Court has any other questions, that's it. Thank you both sides for good arguments. The case of the United States v. Ferguson is now submitted for decision, and that completes our argument for this morning. We are now adjourned.
judges: Hug, Fletcher W. , Smith M.